Good morning, Your Honor. My name is Michael McAvoy-Amaya. I am attorney for the Can you pronounce your last name one more time? It is McAvoy-Amaya. I am the attorney for the plaintiff, Coy Cook, also the appellant. This case arises out of Plaintiff Coy Cook's claims of workplace discrimination and retaliation. While the plaintiff was As an initial matter, I must stress that the declarations that the court, the district court relied on below were unsigned. They're unsigned and unsworn. The court relies on them significantly throughout its opinion, and then the defendant also repeatedly in their opposition brief. We believe that that would be error for the court to consider that evidence now. Is that objection in the record? Yes, I did, Your Honor. We raised the objection to reliance on the self-serving declarations below. Yes. Are you based on the basis that they were hearsay? Just that they were self-serving declarations written by the defendant. Well, that's a different issue than you've stated to us. Did you raise the issue that they were unsigned? I do not believe we mentioned unsigned. If you want to state an issue that you raised before, I'll be interested in hearing it. But if you're trying to say, Oh, by the way, I've got this argument over here that's never been stated before, that's something different. I think that's the point of Judge Bea's question. Have you raised the issue you just articulated? And I think the answer you've just given us is no. We gave the general objection that they were self-serving declarations drafted by the defendant. Of course, declarations are always self-serving. Would you submit a declaration on your case that didn't serve your client? No, Your Honor. Obviously not. What was your specific objection to the declarations as presented? That's what it was in the opposition.  Self-serving. I don't believe we referenced the signature. But they remain unsigned. Not personal knowledge, just self-serving. Thank you. But they remain unsigned here now. There's no signature on them, and so they are not testimony. And as I said, the opposing counsel has cited to that as testimony, but they remain unsigned. Was your objection that there was no evidence that they were the personal statements of the declarants? Yes. We raised the issue of them being inconsistent with their testimony. That's something else. I'm trying to get your objection as to the lack of signature. We did not reference the signature in the brief below. Then why don't you talk about something else that you'd like to talk about? I can move on, Your Honor. I just wanted to reference that issue. Well, if you start with something that hasn't been raised before, it's not a good sign. So why don't you move something that has been raised before? Well, the district court in this matter applied an identical comparator standard that this Court has rejected in the past. Would you repeat that? It applied to what standard? An identical or exact comparator standard. Under the McDonnell-Douglas framework, to establish a prima facie case, a plaintiff must present evidence showing that he is a member of a protected class, he was qualified for the position, or was performing the job in a satisfactory manner, he suffered an adverse employment action, and a similarly situated individual's of his own. You're talking about the race discrimination claim? Yes. Yes. Who was similarly situated, who was treated differently? Yes. Jeremy Longobardi. Did you ever raise Jeremy Longobardi's name in connection with your response to summary judgment? Yes, we did. This evidence — Do you have a cite for me? I did not see that in the record. It is — we cite the evidence. So this evidence was not — number one, this evidence was not disclosed during the discovery period. The defendants attached this evidence to their opening brief. We raised that objection below. Then we cited to that evidence and said that these employees, this evidence of this employee discipline does not show that different employees were treated the same. We say that it was treated differently. But again, we did not have enough — Can I stop you there and back you up? Yes. Because I don't want to get me confused by your answer. I did not see in your response to the summary judgment motion mention of Longobardi. So I'm trying to figure out if that issue has been forfeited. Do you have a record cite where you actually did reference Longobardi that I missed? I do not have a record cite of where his name is mentioned. We cite to their exhibit and his — and his discipline given by the — the other side, and it's in the reply to the motion for summary judgment. And the reason why it didn't was it didn't include — or it was in the opposition to the motion for summary judgment. The Court probably did as well. So you didn't raise it with sufficient specificity for the Court to know, okay, I'm going to rely on Mr. Longobardi as the comparator. He's similarly situated. Here's how he's similarly situated, and he was treated different because he got the progressive discipline and your client didn't. It's not hard to raise it in that fashion, and I didn't see it from the record. But we did cite to his discipline specifically. Who? His? Mr. Longobardi. So there's two individuals that are — that are comparators, that these disciplinary — these disciplinary notices were not given to us during discovery. They were instead attached to the — to the appendix on summary judgment for the first time. So we did not have time to review it, but we did cite directly to that evidence and said that these employees that were disciplined for these issues, and we referenced what they were disciplined for, do not evidence that other employees were treated differently. That's in the opposition. We did raise the issue. Did we — did we have — we did not have time to specifically. I have to confess, I missed it. Yeah. So make sure you save time for rebuttal. When you come back up again, it will be helpful to give me an ER site so I can look at it again. I will do that, Your Honor. And again, the issue there is, is those comparators were not — that evidence was not disclosed to us. We didn't have enough time to really review it. There's a little bit of a moving target here, because you have not identified as an issue on appeal this discovery complaint you're articulating to us now. There were rumblings in the brief, but we deal with specified issues, and I didn't see an issue that said, because of these discovery failures, the whole thing needs to be gone, sent back so the discovery can be reopened. We did raise the objection — the objection to — to the failure to disclose that in that brief as well. Where? It is in the opposition. And I can give you a citation. No, no, no. You're opening brief to this Court. Where is it? Oh, that is also in — that is also in the reply. It's not in the opening brief. But it's not raised to us, is it? I believe it's actually — it actually is in the opening brief. This is what I mean about moving target. Appeal isn't a do-over. You don't get to make up issues and decide, well, I'm not going to argue that anymore, I'm going to argue this. We've got defined issues. I understand. This is not a defined issue. This was an issue that was raised. To who? Not to us? Not in the opening brief? To the lower court and in the opening brief. Yeah, we don't go back and try to dig out what might have been complained about in the opening brief. Where in the opening brief is it? That's the question I posed to you. I will give you the citation on — on rebuttal, Your Honor. Okay. I mean, let's go ahead and — the one that really gets to me here, it's on the other issue, but we might as well put it on the table. It seems to me that the argument you've posed to us on the Section 301 claim is that we made this argument to the district court, and the district court applied the wrong definition of insubordination. So I go look at the record in the district court, and there is a footnote in tiny print that consists of one sentence that says, by the by, the district court's not got a — the defendant's not using the right standard. Nothing about what is developed in the opening brief appears to have been presented to the district court. Well, Your Honor, on summary judgment, it's the defendant's burden to establish — to establish that there is no issue of material fact. Yeah, but that doesn't have to mean they've got to make up every issue possibly that somebody might raise. Your job in opposing is to say, here's the problem with it, and here's the problem with it is not accomplished by having a one-sentence, fine-print footnote that says there are other standards out there. The issue was that there was no other — there was no legal standard argued, though. There is just a — they don't even attempt to define what insubordination was under the law. You don't say that in your response, in your presentation to the district court. That sentence says, Defendants also fail to argue the requisite standard for insubordination, terminations and arbitration, period. That's all that it says. It doesn't say there is this definition that should have been applied, the argument that you make in the opening brief. That's no place given to the district court. We cited the case that establishes that standard. Again, it was the defendant's seeking summary judgment. An unpublished opinion from the Federal Circuit. Again, still, even if you're going to argue insubordination as a general definition, I mean, a legal definition would be the best definition. And that's something you could have said to the court. Well, that's what we did in the footnote. No, that's not what you said in that footnote. You're asking — I mean, we've got a famous quotation, The court's not a pig searching for truffles. We don't go out and try to develop the arguments for you. Where have you presented either to any place, to the district court, the argument that you presented to us in the opening brief? Again, we raised it in the footnote. With regards to — Which in the opening brief you described as highlighting, kind of the antithesis of highlighting. That's not preserving an issue. If there's nothing else you can refer to, then okay, that's it. Is there any place else in your brief that suggests a different meaning to the term insubordination? That was the citation to it. That was the raising of the issue. The answer would be no. No, because the other side did not respond or did not raise the issue at all. And so there was no definition proposed regarding insubordination. And because of this, we raised the issue that there's a legal definition for it, but they never responded to that. And — Was the legal definition that they should have responded to? The legal definition was applying the common law. The industrial common law definition requires notice of — Did you mention that insubordination should include the common industrial law in any of your briefs? That's what that case we cited says. But you don't say that. We didn't raise it in the — we didn't reference it. You want the district court to be the pig searching for truffles to make the argument that you've decided not to make. Yeah. We believe that citing the correct — the case with the correct standard was preserving the issue. Yeah. With regards to the standard that they actually applied in the case, still the Court stated that an exact comparator was required, an identical one. This is a standard that has been rejected by this Court. The exact comparator standard, this Court has aligned itself with the Seventh Circuit and the Eleventh Circuit, that an exact comparator is not — is not required, only someone that is substantially similar. Here we have — Right. Even if we go to similarly situated individual, as we discussed earlier, I don't know that you have the evidence to get there. But do you want to save the rest of your time? Yes, I will save the rest of my time. Good morning, Your Honorable Panel. My name is Emil Kim, representing Appellee on Appeal. May it please the Court. The district court properly granted summary judgment with respect to all of appellant's claims, and the district court's order walks us through sort of a proper and thorough analysis with respect to what that analysis is, right? And so just touching first on the race discrimination claim, Your Honor, the narrow issue on appeal is whether or not the district court properly applied an analysis under Ninth Circuit precedent with respect to the fourth element alone, right? There's two prongs, whether similarly situated employees were treated more favorably or other circumstances demonstrating an inference of — surrounding the adverse employment action demonstrating an inference of discrimination. And, Your Honor, has the district court properly analyzed both prongs of the fourth element in contrast to appellant's arguments on appeal? Because I understand appellant's argument. He says that Lombardi and another person — he didn't give me the name. Right. Were treated more favorably. They weren't fired. Right. They didn't take a break. Right? In essence, but again, so to address that point, Your Honors, those two comparators, Mr. Lombardi and Mr. Schachet, again, to your point, were not addressed at any point in the opposition to summary judgment as comparators for them. What ended up happening is on the opening brief for summary judgment, we presented the evidence of Mr. Lombardi and Mr. Schachet as comparators to demonstrate that he was, in fact, not treated unfairly, that they both were terminated immediately for violations of standard of conduct. Right? And because they didn't make an argument to that effect, now essentially what we're saying is that there are comparators and utilizing them for their benefit, but in effect, it's meritless because they're not comparators for their benefit. I thought that Mr. Lombardi was not immediately terminated for dishonesty. Right? He was. Making false statements. So as I understand it, and correct me if I'm wrong, the CBA allows immediate termination for either insubordination or making false statements. Right. So Mr. Cook was insubordinate. Sure. And Mr. Lombardi was dishonest. Sure. But he wasn't fired right away. Well, he wasn't terminated immediately for that. Right. But he was terminated immediately pending investigation for another instance when he had a less progressive discipline history. But let's talk about the first instance. Sure. Right? So the CBA allows for immediate termination both for dishonesty and insubordination. Right. One person was insubordinate. Sure. Immediate termination. The other person was dishonest. No immediate termination. Did I get that right in the record? I think you do. Whether he preserved that issue is a separate question. Right, right, right. Sure. But I thought that that was the state of the record in terms of Lombardi's conduct. He was terminated later, but I thought that was for a separate offense. It was. It was, Your Honor. It was for a separate offense. But it was an immediate termination with less progressive. So if we were to use Mr. Lombardi as the comparator, how do you respond to the difference in treatment? Well, then I would respond that it would have to be related to an act of insubordination, as the district court pointed to, or an act, excuse me, another form of insubordination which did not lead to a termination, not dishonesty, which I understand, Your Honors, is one of the enumerated forms of misconduct within the CBA. So I understand your point, but I would distinguish that by saying that it's not a form of insubordination, Your Honors. But why does it have to be insubordination? The CBA allows for termination of dishonesty as well. I mean, obviously the negotiated CBA deems dishonesty to be just as serious as insubordination such that no progressive warning is really required. Right. So why do I have to go into the category of insubordination versus insubordination instead of dishonesty versus insubordination? Well, I don't think every form of enumerative conduct is the same, and it could be circumstantial, Your Honor. But I would argue here that it would have to be within the realm of insubordination or another form of insubordination. But I do understand your point, Your Honor. But I would say that, again, that argument wasn't preserved on appeal. In fact, if you look at page 11 of the opposition to their summary judgment, when they do address Mr. Longobardi – they don't address Mr. Shachet, but when they do address Mr. Longobardi, it's in a simple single paragraph. And essentially their arguments are twofold in that it's, one, to essentially argue that the – well, it's one-fold. They essentially argue that the evidence of Mr. Longobardi is not relevant. It only establishes that they may have harassed another employee after he was terminated, Mr. Cook was terminated. And so there's no argument made to preserve on appeal with respect to Mr. Longobardi that it is a comparator for the benefit of them to meet their burden as to the fourth element of a prima facie case of discrimination, Your Honors. Let me get something straight, Mr. Kim. Sure. I've been trying to follow the discussion here. Was there any evidence that any employee who committed insubordination was not terminated? No, there was not, Your Honor. That's what I thought. Yeah. And I would point to the district court's specific language here in their order, which states – and this sort of exemplifies how the district court went through a 1-2-3 analysis under a controlling Ninth Circuit precedent and did not limit its analysis simply to an identical comparator as Appellant has argued, right? So, quote, the district court says, Plaintiff has not identified a single employee who refused to go out on a lunch break but was not terminated, right? Step one, i.e., a precise comparator. Then the district court goes on to state, or even an employee who acted insubordinately for another reason and still was not terminated, i.e., step two, a similar comparator. But most importantly here, in contrast to Appellant's argument, the district court then states, While plaintiff has submitted some evidence that could support his contention that he was treated unfairly by defendant, he has not demonstrated that that unfair treatment could be racially motivated. In other words, in contrast to Appellant's argument, the district court did consider all of the progressive discipline issues, the potential comparators there, all of the evidence in front of it, but determined that there was no inference of discrimination, i.e., the second prong of the fourth element. And so the district court unequivocally analyzed both prongs here, in contrast to Appellant's argument, demonstrating that it properly conducted analysis and properly granted summary judgment with respect to this claim. If there are no other questions, I could move on to the breach of the CBA issue. Sure. Okay. So again, the district court properly granted summary judgment with respect to that claim as well, and it is noted a lot of the issues raised by your Honorable Panel to Appellant's counsel. Here, just to start, the LMRA vests an exclusive jurisdiction to hear LMRA claims, breach of the CBA claims, to federal district courts, right? And in that realm, and we cited a lot of case law to support this contention, is that the substantive law governing breach of the CBA cases under the LMRA is federal common law, not industrial common law, as argued by Appellant's counsel. And we do want to note that the only argument made at the summary judgment stage with respect to that was in a single footnote in the last sentence of the breach of the CBA section in the opposition. And again, it was a single sentence that stated that essentially defendant did not even argue the requisite standard for CBA terminations, and there was nothing else. It was just a brief citation to a federal circuit case called PARBS. And again, in that footnote, there was no recitation of, or excuse me, reference to the industrial common law, no reference to the industrial common law definition or standard of insubordination. And even looking at PARBS itself, PARBS does not even stand for that proposition. There is not a single reference in PARBS with respect to the industrial common law or, excuse me, or the industrial common law definition of insubordination. And so again, in our appellate brief, we cited two cases to demonstrate that when a federal court hearing an LMRA case, breach of the CBA claim, is faced with an undefined CBA term, like here, undisputedly is insubordination, a district court can find that undefined CBA term. And so then the district court properly looked to the Merriam-Webster dictionary definition, which was disobedience to authority, which is a common definition that we all understand for insubordination. And with the evidence presented in front of it, namely plaintiff's own deposition testimony demonstrating that he in fact admitted that he refused to go on a break after being told to go on a break by his manager, that he was in fact insubordinate. Right, Your Honors? And then so the sort of second issue on appeal with respect to this claim is whether or not the district court properly determined that the employer had just cause under the specific provision of the CBA section 6.01 to justify an immediate termination for insubordination. And again, the CBA provision is really clear here and indicates that certain forms of enumerated conduct, such as insubordination, provide the employer with just cause to grant an immediate termination. And we cited several cases that have reviewed similar CBA provisions, because this one is not uncommon, and which holds and supports that proposition. And we also cited the First Circuit case, I think it was Georgia Pacific, which evaluated a similar CBA provision and which held that these certain forms of enumerated conduct, if acted in that manner, provides per se just cause, giving an employer just cause to terminate immediately a covered employee. And so, Your Honors, for those reasons, the district court properly granted summary judgment. And again, if there are no other questions, we respectfully request that this panel affirm the decision of the lower court. All right. Thank you, counsel. In response to your question in the citation to the record, where we referenced Mr. Longobardi is in 2-COOK-ER-470-471. We referenced the Caucasian Beverage Department bartender. That is Longobardi, who we're referencing as the Caucasian Department bartender. We also cite to the disciplinary action that was not disclosed during discovery but attached to their appendix there. So that is where we reference Mr. Longobardi and how that evidence actually contradicts the defendant's argument that that was — that somehow showed that these individuals were disciplined inconsistent with COI. We argue instead that this evidence — I understood Mr. Kim to tell me that Longobardi was fired. He was eventually fired, but the issue in that discipline was that he was — there was a record of conversation that he was given for violation of 6.01 for an equivalent violation of the CBA that results in termination. It wasn't insubordination. It was dishonesty, I believe, which is one of the lists in there. Are you arguing that Longobardi was treated more favorably because he was white and not black? That's a situation where a non-African-American bartender was treated more favorably than a — Now, next question. How was he treated more favorably, in your view? He wasn't immediately terminated. Instead, he was given a record of conversation, which is the first step of — Immediate termination. For the timesheet issue? No, it was for a dishonesty, I believe. Dishonesty on the timesheets? I believe so, yes. And then also there was an issue with discourteousness to a guest, which somebody was given progressive discipline for that as well. But I think they were terminated, but they applied the progressive discipline system to that discipline. And I believe that's Sakid, Uriel Sakid, who is also not specifically referenced by name, but her — the discipline that was attached to their initial brief was cited. And again, we didn't have this evidence until after they filed their brief. In addition to that, I would note that for the CBA issue, the just cause issue was raised by us in the brief. We extensively briefed the issue of establishing just cause for the termination that it's required regardless of what the termination decision is. They always have to determine just cause to jump straight to termination. And that analysis was never argued on their part in the reply when we raised it, and the Court never addressed it either. And even this Court's own jury instructions on Section 301 claims says just cause is always required. I'm having difficulty understanding your point. Let's say that Lombard — I'll call him Lombardi. Jeremy. Jeremy. Let's say Jeremy got progressive discipline and was then fired. Is it your position that had Cook gotten progressive discipline, he would not have been fired? Yes. That is our position because he was not at the final step. He was not at the final step. Yes. So what did Jeremy do after getting progressive discipline that caused him to be fired? There was additional violations that he did that ultimately led to progressive discipline termination. And this occurred with multiple other employees that we did have access to, too, just in a separate instance of not being the termination issue but the stuff with the cell phone, the incidents involving policy violations that didn't exist. We're going into new grounds, and you're over time. Let me see if my colleagues have any additional questions. Well, I'm curious. You said just cause. As I look at the agreement, the CBA says you can be terminated immediately for incompetence. What requires separate and apart, or rather from insubordination, what separate and apart from that requires a showing of just cause? The CBA requires all terminations to be supported by just cause. No, it doesn't. You can be terminated immediately. I'm looking at it. Tell me where in the CBA it says that. It says it sets up specific things that permit immediate termination. And one of those things is insubordination. That seems to say that's good enough all by itself. I believe it's Article 21, which is the grievance and arbitration procedure, which relates to all terminations in discipline. And it says all terminations must be supported by just cause. I believe that is the provision. But if you give me a moment, I can confirm it. No, actually, it's 6.1. It says after the probationary period, no employee will be terminated or shall be disciplined and or discharged except for just cause. That is an exact quote. And the paragraph continues and says you can do it immediately for dishonesty, incompetence, misconduct, insubordination, and so forth. That seems to apply pretty clearly that the agreement treats as just cause all those things that are listed permitting immediate termination. But it still has to be – they still have to establish and analyze the just cause for that termination. Not if the agreement says that's enough. But okay. All right. We've taken you over time. Thank you very much for your arguments today. Mr. Kim, you as well. The matter is submitted and we're adjourned for the day. Thank you.
judges: CLIFTON, BEA, NGUYEN